UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

HPG CORPORATION, a
corporation; TWIN BUILDERS
FOUNDATION CORPORATION, a non-
profit corporation; HOME AND
BUSINESS PRESERVATION GROUP
CORPORATION, a non-profit
corporation; CRESENCIO
CAROLINO, an individual; FLORO
ESPINOZA, an individual;
ELEANOR BUENVIAJE, an
individual; BENJAMIN
BUENVIAJE, an individual;
EDUARDO FERRER, an individual;
on behalf of themselves and
all others similarly situated,

       NO. CIV. S-10-0374 FCD/KJM

       Plaintiffs,

    v.

       MEMORANDUM AND ORDER

AURORA LOAN SERVICES, LLC, a
corporation; HOUSEHOLD FINANCE
CORP OF CALIFORNIA, a
corporation; ING DIRECT, a
corporation; on behalf of
themselves and as
representatives for all others
similarly situated,

       Defendants.
_____/

1

----oo0oo----

This matter is before the court on defendant Aurora Loan Services LLC's ("defendant" or "Aurora") motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6).[1]  Plaintiffs oppose the motion. For the reasons set forth below,[2] defendant Aurora's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiffs Cresnecio Carolino ("Carolino") and Floro Espinosa ("Espinosa") are both residents of California who own and reside in single family homes.  (Compl., filed Feb. 12, 2010, ¶¶ 13-14.)  Plaintiff HPG Corporation ("HPG") is a California foreign corporation, which represents thousands of homeowners in California, providing services and access to services that help to educate and assist homeowners in alleviating financial issues. (Id. ¶ 10.)  Plaintiff Twin Builders Foundation Corporation ("Twin Builders") is a California foreign Non-Profit Corporation. The purpose of Twin Builders is to "(1) instruct and train individuals for the purpose of improving and developing their capabilities; and (2) provide relief to the poor, distressed and underprivileged."  (Id. ¶ 11.)  Plaintiff Home and Business Preservation Group Corporation ("HBP") is a California foreign Non-Profit Corporation, whose purpose is "to teach, train and

---

[1]     Defendant Household Finance Corp. of California ("Household") also filed a motion to dismiss plaintiffs' complaint.  On September 1, 2010, plaintiffs and defendant Household filed a stipulation of dismissal with prejudice.

[2]     Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 230(g).

2

1  assist homeowners to protect the financial and emotional
2  stability of their household and to assist small businesses in
3  obtaining financial stability." (Id. ¶ 12.)  Defendant Aurora,
4  through various agents, purportedly has conducted foreclosure
5  sales of plaintiffs Carolino and Espinosa's properties. (Id. ¶
6  17.)

7  **A.   Plaintiff Carolino**

8       On September 27, 2006, a Deed of Trust was recorded in the
9  County of San Joaquin, listing Carolino as a borrower for
10 property located at 3054 Joshua Tree Circle in Stockton,
11 California. (Ex. 1 to Def.'s Req. for Judicial Notice ("RFJN"),
12 filed July 19, 2010.)  On October 17, 2008, a Substitution of
13 Trustee was executed, substituting Quality Loan Service
14 Corporation as Trustee under the Deed of Trust. (Ex. 2 to RFJN.)

15      Carolino filed a bankruptcy petition on March 25, 2009,
16 which was dismissed on May 6, 2009 for unreasonable delay and
17 failure to file documents. (Ex. 13 to RFJN.)  Carolino filed a
18 second bankruptcy petition on November 13, 2009, which was also
19 dismissed for unreasonable delay and failure to file documents on
20 January 7, 2010. (Ex. 15 to RFJN.)

21      On May 19, 2009, a Trustee's Deed Upon Sale was filed after
22 the property was sold at public auction on May 13, 2009. (Ex. 3
23 to RFJN.)

24 **B.   Plaintiff Espinosa**

25      On June 15, 2007, a Deed of Trust was recorded in El Dorado
26 County, listing Floro Espinosa as a borrower for property located
27 at 371 Chagall Court in El Dorado Hills, California. (Ex. 4 to
28 RFJN.)  On November 18, 2008, a Substitution of Trustee was

1   executed, substituting Quality Loan Service Corporation as

2   Trustee under the Deed of Trust; it was recorded on January 2,

3   2009. (Ex. 6 to RFJN.)  On November 19, 2008, a Notice of

4   Default and Election to Sell Under Deed of Trust was filed in El

5   Dorado County. (Ex. 5 to RFJN.)

6      Espinosa filed a complaint arising out of pending

7   foreclosure proceedings against defendant Aurora, Quality Loan

8   Service Corporation, and Summit Funding, Inc. on March 18, 2009,

9   which he later stipulated to dismiss. (Ex. 7 to RFJN.)

10  Subsequently, Espinosa filed a bankruptcy petition on August 10,

11  2009, which was dismissed on October 23, 2009. (Ex. 8 to RFJN.)

12  He filed a second bankruptcy petition on November 25, 2009, which

13  was dismissed with prejudice on February 8, 2010. (Ex. 10 to

14  RFJN.)

15      On June 16, 2010, a Trustee's Deed Upon Sale was filed after

16  the property was sold at public auction on June 9, 2010. (Ex. 21

17  to RFJN.)

18  **C.   General Allegations**

19      Plaintiffs allege that defendant Aurora foreclosed on

20  plaintiffs' and others' properties without complying with the

21  statutory procedures for non-judicial foreclosure. (Compl. ¶ 1.)

22  Specifically, plaintiffs contend that defendant has foreclosed on

23  properties without having first obtained assignment of the

24  mortgage and the power of sale on the property it purports to

25  foreclose. (Id. ¶¶ 2-3.)  As such, plaintiffs bring claims on

26  behalf of themselves and on behalf of putative classes based on

27  alleged California statutory violations and breach of the duty of

28  good faith and reasonable diligence.  Plaintiffs seek, *inter*

*alia*, (1) declaratory and/or injunctive relief setting aside foreclosure sales; (2) declaratory and/or injunctive relief preventing foreclosure sales; (3) damages; and (4) attorney's fees.

**STANDARD**

**A.   Lack Of Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Lack of subject matter jurisdiction may be asserted by either party or by a court, *sua sponte*, at any time during the course of an action.  Fed. R. Civ. P. 12(h)(2)-(3).  Once challenged, the burden of establishing a federal court's jurisdiction rests on the party asserting the jurisdiction.  See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990).

There are two forms of 12(b)(1) attacks on subject matter jurisdiction: facial and factual attacks.  See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  In a facial attack, a court construes jurisdictional allegations liberally and considers uncontroverted factual allegations to be true.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); Oaxaca v. Roscoe, 641 F.2d 386, 391 (5th Cir. 1981).  However, where the defendant refers to matters outside the complaint to challenge the plaintiff's assertion of subject matter jurisdiction, the 12(b)(1) motion is a factual attack.  See Safe Air v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack, a district court may review affidavits or evidence relating to the

jurisdictional issue and need not presume the truthfulness of the plaintiff's allegations.  Id.  The burden then falls upon the party opposing the motion to present affidavits or other evidence to establish subject matter jurisdiction.  Id.

**B.   Failure To State A Claim**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

6

1    Nevertheless, the court "need not assume the truth of legal
2  conclusions cast in the form of factual allegations." United
3  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
4  Cir. 1986).   While Rule 8(a) does not require detailed factual
5  allegations, "it demands more than an unadorned, the defendant-
6  unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.   A
7  pleading is insufficient if it offers mere "labels and
8  conclusions" or "a formulaic recitation of the elements of a
9  cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at
10  1950 ("Threadbare recitals of the elements of a cause of action,
11  supported by mere conclusory statements, do not suffice.").
12  Moreover, it is inappropriate to assume that the plaintiff "can
13  prove facts which it has not alleged or that the defendants have
14  violated the . . . laws in ways that have not been alleged."
15  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
16  of Carpenters, 459 U.S. 519, 526 (1983).

17    Ultimately, the court may not dismiss a complaint in which
18  the plaintiff has alleged "enough facts to state a claim to
19  relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949
20  (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570
21  (2007)).   Only where a plaintiff has failed to "nudge [his or
22  her] claims across the line from conceivable to plausible," is
23  the complaint properly dismissed. Id. at 1952.   While the
24  plausibility requirement is not akin to a probability
25  requirement, it demands more than "a sheer possibility that a
26  defendant has acted unlawfully." Id. at 1949.   This plausibility
27  inquiry is "a context-specific task that requires the reviewing
28  /////

1  court to draw on its judicial experience and common sense." <u>Id.</u>
2  at 1950.

3                              **ANALYSIS**

4  **A.   Aurora's Exhibits**

5       In ruling upon a motion to dismiss, the court may consider
6  matters which may be judicially noticed pursuant to Federal Rule
7  of Evidence 201.  <u>See</u> <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d
8  646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of</u>
9  <u>U.S., Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule 201
10 permits a court to take judicial notice of an adjudicative fact
11 "not subject to reasonable dispute" because the fact is either
12 "(1) generally known within the territorial jurisdiction of the
13 trial court or (2) capable of accurate and ready determination by
14 resort to sources whose accuracy cannot reasonably be
15 questioned."  Fed. R. Evid. 201(b).  The court can take judicial
16 notice of matters of public record, such as pleadings in another
17 action and records and reports of administrative bodies.  <u>See</u>
18 <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1198 (9th Cir. 1988).

19      "Even if a document is not attached to a complaint, it may
20 be incorporated by reference into a complaint if the plaintiff
21 refers extensively to the document or the document forms the
22 basis of the plaintiff's claim."  <u>United States v. Ritchie</u>, 342
23 F.3d 903, 908 (9th Cir. 2003).  "The defendant may offer such a
24 document, and the district court may treat such a document as
25 part of the complaint, and thus may assume that its contents are
26 true for purposes of a motion to dismiss under Rule 12(b)(6)."
27 <u>Id.</u>  The policy concern underlying the rule is to prevent
28 plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately

                                  8

omitting references to documents upon which their claims are based." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), superceded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006).

Here, several of plaintiff's claims for relief are dependent upon information contained in the deeds of trust, the substitutions of trustee, the notice of default, and the trustee's deeds upon sale. Because they form the basis of several of plaintiff's claims for relief, the court takes judicial notice of these documents and assumes their contents are true for purposes of the motion to dismiss. See Ritchie, 342 F.3d at 908. Moreover, with respect to the documents relating to plaintiff's bankruptcy proceedings and pleadings in other cases, such matters are public record. Accordingly, the court takes judicial notice of the filings.[3]

**B.   Judicial Estoppel**

Defendant Aurora moves to dismiss plaintiffs Carolino and Espinosa's claims on the basis of judicial estoppel.[4]

---

[3]   Plaintiffs "request the opportunity to depose the declarants or otherwise develop relevant facts of its own" if the court takes judicial notice of the documents. As an initial matter, there are no declarants to depose. Further, plaintiffs have failed to address what "relevant facts" they seek to develop in response to defendant's submissions. Accordingly, plaintiffs' request is DENIED.

[4]   Neither plaintiffs nor defendant address claims brought by plaintiffs Eleanor and Benjamin Buenviaje and Eduardo Ferrar, whose homes have been brought into foreclosure proceedings by other defendants. A plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury." La Mar v. H&B Novelty & Loan Co., 489 F.2d 461, 462 (9th Cir. 1973). Because the complaint fails to allege any harm suffered by these plaintiffs arising from defendant Aurora's conduct, such claims against defendant Aurora are dismissed.

9

Specifically, defendant asserts that Carolino and Espinosa failed to disclose an action against Aurora on their bankruptcy petitions, and thus, are prevented from pursuing the current litigation.

Judicial estoppel is an equitable doctrine, invoked by a court at its discretion, that precludes a party from gaining an advantage by asserting one position and subsequently taking a clearly inconsistent position. Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 782 (9th Cir. 2001) (citations omitted); Russel v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). The United States Supreme Court has listed three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's position is "clearly inconsistent" with its earlier position; (2) whether the first court accepted the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. New Hampshire v. Maine, 532 U.S. 742 (2001).

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Hamilton, 270 F.3d at 783 (citing Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992)). In Hamilton, the Ninth Circuit affirmed the district court's determination that the plaintiff's claim against his insurance company was barred by judicial estoppel because the plaintiff had failed to list the claim as an asset in his Chapter 7 bankruptcy schedule. Id. at 785. The court noted that this

failure "deceived the bankruptcy court," and therefore, the court "must invoke judicial estoppel to protect the integrity of the bankruptcy process." <u>Id.</u> (<u>quoting</u> <u>In re Costal Plains</u>, 197 F.3d 197 (5th Cir. 1999) (discussing the continuing duty to disclose in Chapter 11 bankruptcy proceedings)).

Section 541(a)(1) of the Bankruptcy Code provides that at the time of commencement of the bankruptcy proceeding, the bankruptcy estate includes "all legal or equitable interests of the debtor." 11 U.S.C. 541(a)(1). This "includ[es] causes of action belonging to the debtor at the commencement of the bankruptcy case." <u>See</u> <u>In re Costal Plains</u>, 179 F.3d at 207-08. In Chapter 13, the bankruptcy estate also includes claims which are acquired "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. 1306(a)(1). Therefore, the Bankruptcy Code subjects debtors to a "continuing duty to disclose all pending and potential claims." <u>Kane</u>, 535 F.3d at 384-85; <u>Hamilton</u>, 270 F.3d at 785 ("The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding."); <u>see</u> <u>In re Coastal Plains</u>, 179 F.3d at 207-08. "*[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets*." <u>Hamilton</u>, 270 F.3d at 785 (<u>quoting</u> <u>In re Coastal Plains</u>, 179 F.3d at 208) (emphasis in original).

"The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." <u>Id.</u> The duty to disclose prevents the

11

1  plaintiff from proceeding on a cause of action which is the

2  property of the bankruptcy estate.  See id. at 784 ("Judicial

3  estoppel will be imposed when the debtor has knowledge of enough

4  facts to know that a potential cause of action exists during the

5  pendency of the bankruptcy, but fails to amend his schedules or

6  disclosure statements to identify the cause of action as a

7  contingent asset." (Citation omitted)).

8       In this case, the facts and events upon which plaintiff

9  Carolino bases her claims occurred on October 17, 2008, when

10  Quality Loan Service Corporation was substituted as trustee in

11  the Deed of Trust, and on May 14, 2009, when Aurora was granted

12  the Trustee's Deed Upon Sale after the property was sold on May

13  13, 2009.  Carolino filed a bankruptcy petition on March 25, 2009

14  and received an automatic stay of any act to obtain possession of

15  property of the estate until the time of dismissal or discharge

16  pursuant to 11 U.S.C. § 362.  This bankruptcy case was dismissed

17  on May 6, 2009 for unreasonable delay and failure to file

18  documents.  Subsequently, Carolino filed a second bankruptcy

19  petition on November 13, 2009 and received an automatic 30-day

20  stay of any act to obtain possession of property of the estate

21  pursuant to 11 U.S.C. § 362(c)(3).  This case was also dismissed

22  for unreasonable delay and failure to file documents on January

23  7, 2010.  Neither of Carolino's petitions disclosed the claims

24  against defendant Aurora.  (See Exs. 14, 16 to RFJN.)

25       Similarly, the facts and events upon which plaintiff

26  Espinosa bases his claims occurred on November 19, 2008, when

27  Aurora issued a Notice of Default and Election to Sell Under Deed

28  of Trust, and on January 2, 2009, when Quality Loan Service

1   Corporation recorded that it was substituted as trustee in the

2   Deed of Trust.   Further, Espinosa filed a complaint against

3   defendant Aurora, Quality Loan Service Corporation, and Summit

4   Funding, Inc. on March 18, 2009, which he later stipulated to

5   dismiss.   Subsequently, Espinosa filed a bankruptcy petition on

6   August 10, 2009 and received an automatic stay of any act to

7   obtain possession of property of the estate until the time of

8   dismissal or discharge pursuant to 11 U.S.C. § 362.   This case

9   was dismissed on October 23, 2009.   He filed a second bankruptcy

10  petition on November 25, 2009 and received an automatic 30-day

11  stay of any act to obtain possession of property of the estate

12  pursuant to 11 U.S.C. § 362(c)(3).   This case was also dismissed

13  with prejudice on February 8, 2010.   Neither of Espinosa's

14  petitions disclosed the claims against defendant Aurora.   (See

15  Exs. 9, 11 to RFJN.)

16      Accordingly, as in Hamilton, plaintiffs have asserted

17  inconsistent positions by failing to include a cause of action in

18  their bankruptcy filings and subsequently attempting to sue on

19  that claim outside of the bankruptcy proceeding.   See Hamilton,

20  270 F.3d at 784.   These claims were the property of the

21  bankruptcy estate, and plaintiffs, whether by an act of attempted

22  deceit or mere oversight, failed to list the claims for relief

23  when required to do so.   By filing their petitions with the

24  bankruptcy court, the debtors, by operation of laws that

25  initially presume the filing of good-faith and truthful

26  petitions, received the benefits of automatic stays from the

27  bankruptcy courts.   See Hamilton, 270 F.3d at 784 (noting that

28  discharge of debt is not required to meet the judicial acceptance

13

1   prong and that "[t]he bankruptcy court may 'accept' the debtor's

2   assertions by relying on the debtor's nondisclosure of potential

3   claims in many other ways."). Both plaintiffs, however, sought

4   bankruptcy protection while subverting the bankruptcy process by

5   nondisclosure. While the bankruptcy petitions were each

6   ultimately dismissed, the individual plaintiffs enjoyed the

7   benefit of these stays, not once, but *twice*, and, in *both*

8   instances, failed to comply with the requirement of full,

9   accurate disclosures. Such failure is troubling as to both

10  plaintiffs, but particularly in the case of plaintiff Espinosa,

11  who had filed a lawsuit against defendant Aurora prior to filing

12  his bankruptcy petition.

13      The application of judicial estoppel in this case is

14  necessary to protect the integrity of the bankruptcy process.

15  See Hamilton, 270 F.3d at 785. "The debtor, once he institutes

16  the bankruptcy process, disrupts the flow of commerce and obtains

17  a stay and the benefits derived by listing all his assets." Id.

18  Where a debtor files successive petitions and obtains successive

19  stays without full disclosure of all assets, the debtor derives

20  an unfair advantage if he can later recover on undisclosed

21  claims, and the bankruptcy system is laid bare for abuse. As

22  such, judicial estoppel must bar plaintiffs Carolino and

23  Espinosa's claims against Aurora. See, e.g., Balthrop v. Garcia-

24  Mitchell, Civ. No. 09-1013 FCD/JFM, 2010 WL 430840 (E.D. Cal.

25  Feb. 1, 2010) (applying judicial estoppel to preclude an action

26  by a debtor in Chapter 13 bankruptcy who had failed to disclose

27  the claim in his bankruptcy proceedings); Flores v. GMAC Mortg.,

28  Civ. No. 09-1216 GEB/GGH, 2010 WL 582115 (E.D. Cal. Feb. 11,

14

1  2010) (estopping plaintiff from bringing a TILA claim because the

2  claim was not disclosed in the plaintiff's bankruptcy schedules).

3      Therefore, defendant's motion to dismiss plaintiffs Carolino

4  and Espinosa's claims against it is GRANTED without leave to

5  amend.

6  **C.   Standing of Corporate Plaintiffs**

7      Defendant Aurora also moves to dismiss plaintiffs HPG, Twin

8  Builders, and HBP (the "corporate plaintiffs") on the basis that

9  the corporate plaintiffs lack standing.  The corporate plaintiffs

10  assert that they have standing to sue under the doctrines of

11  either third-party or associational standing.

12      The issue of standing is a threshold determination of

13  "whether the litigant is entitled to have the court decide the

14  merits of the dispute or of particular issues." <u>Warth v. Seldin</u>,

15  422 U.S. 490, 498 (1975); <u>Steel Co. v. Citizens For A Better

16  Env't</u>, 523 U.S. 83 (1998).  "The judicial power of the United

17  States defined by Art[icle] III is not an unconditioned authority

18  to determine the constitutionality of legislative or executive

19  acts." <u>Valley Forge Christian Coll. v. Americans United For

20  Separation of Church and State, Inc.</u>, 454 U.S. 464, 471 (1982).

21  Rather, Article III limits "the federal judicial power 'to those

22  disputes which confine federal courts to a role consistent with a

23  system of separated powers and which are traditionally thought to

24  be capable of resolution through the judicial process.'" <u>Id.</u> at

25  472 (quoting <u>Flast v. Cohen</u>, 392 U.S. 83, 97 (1968)); <u>Steele</u>, 523

26  U.S. at 102.  "Those who do not possess Article III standing may

27  not litigate as suitors in the Courts of the United States."  <u>Id.</u>

28  at 476.

15

1    "Standing doctrine involves 'both constitutional limitations
2    on federal-court jurisdiction and prudential limitations on its
3    exercise.'"   Fleck & Assocs., Inc. v. Phoenix, 471 F.3d 1100,
4    1103 (9th Cir. 2006) (quoting Kowalski v. Tesmer, 543 U.S. 125,
5    128-29 (2004)).   The Supreme Court has set forth that "[t]he
6    'irreducible constitutional minimum of standing' contains three
7    requirements."   Steele, 523 U.S. at 102-03 (quoting Lujan v.
8    Defenders of Wildlife, 504 U.S. 555, 560 (1992)).   First,
9    plaintiff must allege an "injury in fact – a harm suffered by the
10   plaintiff that is concrete and actual or imminent, not
11   conjectural, or hypothetical."   Id. at 103 (internal quotations
12   and citations omitted). Second, plaintiff must allege causation –
13   "a fairly traceable connection between the plaintiff's injury and
14   the complained-of conduct of the defendant."   Steele, 523 U.S. at
15   103. (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26,
16   41-42 (1976).   Third, the injury must be redressable – there must
17   be "a likelihood that the requested relief will redress the
18   alleged injury.   Steele, 523 U.S. at 103 (citing Simon, 426 U.S.
19   at 45-46).   Prudential limitations, however, "restrict the
20   grounds a plaintiff may put forward in seeking to vindicate his
21   personal stake."   Fleck, 471 F.3d at 1104 (citing Warth v.
22   Seldin, 422 U.S. 490, 499 (1975)).   Specifically, "a litigant
23   must normally assert his own legal interests rather than those of
24   third parties."   Id. (quoting Phillips Petroleum Co. v. Shutts,
25   472 U.S. 797, 804 (1985)).   "This rule assumes that the party
26   with the right has the appropriate incentive to challenge (or not
27   challenge) governmental action and to do so with the necessary
28   zeal and appropriate presentation."   Kowlaski, 543 U.S. at 129.

16

1          **1.   Third Party Standing**

2          The Supreme Court has acknowledged that "there may be

3   circumstances where it is necessary to grant a third party

4   standing to assert the rights of another." <u>Id.</u> at 129-30.

5   However, these narrow circumstances require the third party to

6   demonstrate the constitutional prerequisites to standing along

7   with two additional showings.  <u>Id.</u> at 130; <u>Fleck</u>, 471 F.3d at

8   1104.  The party asserting the right must demonstrate that it has

9   a "close" relationship with the person who possesses the right.

10  <u>Id.</u>  There must also be a "hindrance" to the possessor's ability

11  to protect his own interests.  <u>Id.</u>  As such, courts have

12  recognized the applicability of third party standing when: (1)

13  the litigant has "suffered an injury in fact, thus giving him or

14  her a sufficiently concrete interest in the outcome of the

15  dispute"; (2) the litigant has "a close relationship to the third

16  party," such that "the third party can reasonably be expected

17  properly to frame the issues and present them with the necessary

18  adversarial zeal"; and (3) there exists "some hindrance to the

19  third party's ability to protect his or her own interests." <u>U.S.

20  v. $100,348.00 in U.S. Currency</u>, 354 F.3d 1110, 1127 (9th Cir.

21  2004) (internal quotations omitted).

22         In this case, the corporate plaintiffs have failed to allege

23  sufficient facts to support third party standing.  As an initial

24  matter, they fail to plead an injury in fact.  While the

25  complaint alleges injuries to individual homeowners, it wholly

26  fails to set forth any damage or injury inflicted upon the

27  corporate plaintiffs.  Second, the complaint fails to set forth a

28  close relationship between the corporate plaintiffs and the

persons whose rights they claim to represent.  Specifically, it is unclear who the clients or members of the corporation are, what services the corporations offer to its members or clients, or any facts supporting why "the former is fully, or very nearly, as effective a proponent of the right as the latter." $100,348.00 in U.S. Currency, 354 F.3d at 1128.  Finally, the corporate plaintiffs fail to demonstrate any hindrance to its members' or clients' ability to protect their own interests. Rather, the influx of cases arising out of foreclosures around the country, but specifically in California courts, demonstrates that homeowners and foreclosed homeowners are capable of asserting their own rights.  See Champlaie v. BAC Home Loans Servicing, LP, --- F. Supp. 2d ---, 2009 WL 3429622 (E.D. Cal. 2009) (noting "the foreclosure cases currently flooding the district courts").[5]  Accordingly, the court concludes that the corporate plaintiffs do not have third-party standing to bring the claims asserted in the complaint.

    **2.  Associational Standing**

"Under the doctrine of associational or representational standing an organization may bring suit on behalf of its members whether or not the organization has suffered an injury from the challenged action."  Fleck, 471 F.3d at 1105.  An association must allege "that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged

---

    [5]    Moreover, to the extent the corporate plaintiffs contend that individuals in foreclosure proceedings would be unable to hire counsel, the Supreme Court has held that "lack of an attorney" is not "the type of hindrance necessary to allow another to assert the indigent defendant's rights." Kowalski, 543 U.S. at 132.

action of the sort that would make out a justiciable case had the

members themselves brought suit." <u>Warth</u>, 422 U.S. at 511. As

such,

> An association has standing to bring suit on behalf of
> its members when: (a) its members would otherwise have
> standing to sue in their own right; (b) the interests
> it seeks to protect are germane to the organization's
> purpose; and (c) neither the claim asserted nor the
> relief requested requires the participation of
> individual members in the lawsuit.

<u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333,

343 (1977).

In this case, as set forth above, the corporate plaintiffs

have failed to identify who their clients or members are, and as

such, it is unclear whether those individuals would have standing

to sue in their own right. Further, while the corporate

plaintiffs set forth the broad purposes of their organizations,

it is unclear whether the interests they seek to protect are

germane to the expansive goals alleged.[6] Indeed, there are no

allegations that the clients or members of the organizations

"have come together to form an organization for their mutual aid

and benefit." <u>Fleck</u>, 471 F.3d at 1106.

Finally, and most problematic to the associational standing

inquiry, the nature of the claims and the relief sought require

individualized proof. At its core, the complaint prays for

declaratory and/or injunctive relief that sets aside or prevents

foreclosure sales based upon statutory violations and for

---

[6] This prong is particularly problematic for plaintiff
HPG, which is not a Non-Profit corporation. The Ninth Circuit
has previously held that the purpose of a for-profit business is
"to turn a profit," not vindicate rights. <u>Fleck</u>, 471 F.3d at
1106.

1  damages.  In order to prevail on these claims, a plaintiff would

2  have to demonstrate that she has the right to sue for such

3  violations, i.e. that there are no procedural bars such as the

4  application of judicial estoppel.  A plaintiff would also have to

5  demonstrate that the statutory violations alleged actually

6  occurred in her specific case.  Further, in order to obtain the

7  relief sought, such as cancelling a voidable sale under a deed of

8  trust, each plaintiff would have to make "a valid and viable

9  tender of payment of the indebtedness" owed.  <u>Karlsen v. Am. Sav.</u>

10 <u>& Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (2d. Dist. 1971); <u>see</u>

11 <u>Anaya v. Advisors Lending Group</u>, 2009 WL 2424037 (E.D. Cal. Aug.

12 3, 2009) ("Plaintiff offers nothing to indicate that she is able

13 to tender her debt to warrant disruption of non-judicial

14 foreclosure"); <u>Alicea v. GE Money Bank</u>, 2009 WL 2136969 (N.D.

15 Cal. July 16, 2009) ("When a debtor is in default of a home

16 mortgage loan, and a foreclosure is either pending or has taken

17 place, the debtor must allege a credible tender of the amount of

18 the secured debt to maintain any cause of action for

19 foreclosure."); <u>Montoya v. Countrywide Bank</u>, 2009 WL 1813973

20 (N.D. Cal. June 25, 2009) ("Under California law, the "tender

21 rule" requires that as a precondition to challenging a

22 foreclosure sale, or any cause of action implicitly integrated to

23 the sale, the borrower must make a valid and viable tender of

24 payment of the secured debt").[7]  Finally, in order to recover

25

26      [7]     While plaintiffs argue that tender is not required
27 where it would be inequitable, the equitable determination of
   whether tender is required would also require an individualized
28 inquiry.  Further, the court notes that plaintiffs' argument is
   contrary to the weight of authority.

1  damages, a plaintiff would have to present evidence of the actual

2  damages suffered.  None of these inquiries raises a pure issue of

3  law.  Cf. Int'l Union, United Auto., Aerospace, & Agric.

4  Implement Workers of Am. v. Brock, 477 U.S. 274, 287 (1986).

5  Rather, each of these questions require individualized proof in

6  order to both determine liability and accord relief.  See

7  Concerned Parents to Save Dreher Park Ctr. v. City of West Palm

8  Beach, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994) (holding "any

9  finding of an ADA violation requires proof as to each individual

10 claimant" and "the relief afforded to each claimant would require

11 an individualized assessment of what measures the City must take

12 in order to comply with the ADA on a case-by-case basis"); Am.

13 Baptist Churches in the U.S.A. v. Meese, 712 F. Supp. 756, 766

14 (N.D. Cal. 1989) (holding that organization did not have

15 associational standing where members would need to prove the

16 motive behind their conduct in order to receive injunctive or

17 declaratory relief).  Accordingly, the corporate plaintiffs do

18 not have associational standing to bring their claims against

19 defendant Aurora.

20      Therefore, because the corporate plaintiffs have not and

21 cannot allege third party or associational standing with respect

22 to the claims asserted and relief sought in the complaint,

23 defendant's motion to dismiss plaintiffs HPG, Twin Builders, and

24 HBP's claims against it is GRANTED without leave to amend.

25                              **CONCLUSION**

26      For the foregoing reasons, defendant Aurora's motion to

27 dismiss is GRANTED.

28 /////

IT IS SO ORDERED.

DATED: September 20, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE